437 N.E.2d 1011 (1982)
Don AUBURN, et al., Claimants-Appellants,
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, As Members of and As Constituting the Review Board of the Indiana Employment Security Division, Appellee, Phelps Dodge Magnet Wire Company, Employer-Appellee.
No. 2-881A287.
Court of Appeals of Indiana, First District.
July 26, 1982.
Rehearing Denied September 9, 1982.
*1013 Barry A. Macey, Nora L. Macey, Miles, Segal & Macey, Indianapolis, for claimants-appellants.
Clyde L. Peterson, King, Downing & Haramy, P.C., Indianapolis, for employer-appellee.
ROBERTSON, Judge.
Don Auburn and other production and maintenance employees (claimants) of Phelps Dodge Magnet Wire Company (Phelps Dodge) appeal the decision of the Review Board of the Indiana Employment Security Division (Review Board) which found the claimants were ineligible for unemployment compensation benefits.
We affirm.
This case involves a labor dispute between Phelps Dodge and the claimants, members of the International Union of Electrical, Radio, and Machine Workers, AFL-CIO, and its Local 963 (union). The union represented the claimants during their negotiations with Phelps Dodge.
The Review Board found that the claimants were not entitled to benefits. In its ruling, the Review Board adopted the following specific findings of the Referee:
The collective bargaining agreement between the employer and the union was due to expire by its terms on June 26, 1979.
The union had scheduled two membership ratification meetings of the anticipated new agreement for June 26 and June 27, 1979, to accomodate all three work shifts.
The employer agreed to extend the agreement until the conclusion of the June 27, 1979, union membership ratification meeting.
Between May, 1979, and June 26, 1979, the employer and union bargaining committees held nine (9) negotiation meetings.
The union membership rejected the proposed agreement presented to them by the union bargaining committee on June 26, and 27, 1979. The employer, upon being notified of the rejection by the membership, locked out the employees effective 2:30 p.m. June 27, 1979. The union membership offered to continue to work.
The negotiations failed to produce an acceptable economic package and acceptable changes in overtime, absenteeism and training/probation period policies.
From the first meeting the union bargaining committee had advised the employer that a modification of the overtime policy was necessary to avoid a strike. The union demanded a voluntary overtime policy. The employer would not accept such a policy.
Although both parties attempted to work out an acceptable overtime policy throughout all nine meetings, the evidence establishes that an agreement on overtime had not been reached.
Similar attempts were made throughout the meetings to change the absenteeism and training/probation period polices [sic]. No agreement was reached.
On June 19, 1979, the union bargaining committee submitted an economic package to the employer.

*1014 On Sunday, June 24, 1979, with two days remaining on the current work agreement, the employer submitted an economic package to the union bargaining committee.
On June 26, 1979, the employer modified and upgraded its economic policy three times.
On June 26, 1979, the union bargaining committee modified its economic package one time.
The evidence establishes, that both parties were very far apart in reaching an agreement on an economic package because of the following matters: A. Duration of contract, B. Increase in hourly wages, C. Cost of living adjustment.
CONCLUSION: Applying the law to the facts, the referee concludes that the bargaining committee were "deadlocked" as of June 26, 1979, on the following "crucial" issues:
1. Non-Economic items.
a. Overtime
b. Attendance
c. Training/probationary period
2. Economic items.
a. Duration of the new agreement
b. Hourly wage increase
c. Cost of living adjustment.
The referee concludes that the deadlock on these six (6) crucial issues, some of which were discussed throughout nine meeting [sic], establishes that a "settlement was not reasonably foreseeable." Therefore, it is concluded that an "impasse" was present on June 26, 1979. Bargaining was not in a fluid state. A labor dispute existed.
Therefore, it is concluded that the claimants are ineligible for waiting period or benefit rights for the period from the week ending June 30, 1979, through and including the week ending October 20, 1979.
In Indiana, an employee cannot receive unemployment benefits when the provisions of Ind. Code 22-4-15-3 are applicable. This section, in relevant part, provides:
An individual shall be ineligible for... . benefits rights for any week ... that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute ...
A labor dispute exists where the bargaining is not in a fluid state and an impasse has developed in the negotiations. Bootz Manufacturing Co. v. Review Bd. Emp. Sec. Div., (1968) 143 Ind. App. 17, 237 N.E.2d 597. An impasse is defined as an absence of an atmosphere in which a reasonably foreseeable settlement of the disputed issues might be resolved. Abbett v. Review Bd. of Indiana Emp. Sec. Div., (1971) 150 Ind. App. 202, 275 N.E.2d 827. A settlement is not reasonably foreseeable when the parties are deadlocked on certain crucial issues without which an ultimate agreement is not possible. Gold Bond Bldg. Prod. Div. v. Review Bd., (1976) 169 Ind. App. 478, 349 N.E.2d 258. If the facts indicate that good faith negotiations are being conducted between labor and management, and that bargaining is in a fluid state such that there is no impasse, neither party can declare a labor dispute. City Pattern & Foundry Co. v. Review Bd., (1970) 147 Ind. App. 636, 263 N.E.2d 218.
The decisions of the Review Board in labor disputes are subject to a two-tier standard of review. Under this standard, the Review Board's finding of ultimate fact is the conclusion and the findings of basic facts are the premises from which the agency deduced its conclusion. Gold Bond, supra. At the first level of review, this court only examines the relationship between the conclusion and the premises and inquires whether the Review Board's deduction is "reasonable". In the second step of review, we examine the nexus between the premises and the evidence presented to determine whether the evidence justified the findings of basic facts. In the second tier of review, this court will not reweigh the evidence or judge the credibility of witnesses but must accept the facts found by the Review Board unless:
1. The evidence on which the Review Board based its conclusions was devoid of probative value;

*1015 2. The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis.
4. There was not substantial evidence supporting the conclusion of the Review Board.
[or]
7. Reasonable men would be bound to reach the opposite conclusion from the evidence in the record.
Id. 349 N.E.2d at 263.
In the first tier of review, this court only examines the ultimate conclusion of the Review Board in light of the basic findings of fact to determine if the conclusion is reasonable. The Review Board adopted the referee's decision that the parties were deadlocked on six legal issues and that the parties were at impasse. We believe that the Review Board's ultimate finding of impasse is a reasonable deduction from the factual findings that the negotiations had failed to produce an acceptable economic package and that the parties could not resolve their dispute in the nine meetings.
On appeal, the union alleges the Review Board erred in concluding that the negotiations had reached an impasse. The union contends that an insufficient amount of time was spent bargaining on economic issues, that there was substantial movement during the last meeting, and that the union did not vote on Phelp Dodge's best proposal. Although the union has construed these allegations as a challenge to the ultimate conclusion of the Review Board, we believe these allegations attack the factual findings, and thus, require an examination at the second tier of review. The union argues that the parties had merely negotiated for five hours on economic issues and that this period of time was too short to conclude the parties were at impasse. The union also contends that Phelps Dodge has the burden of proof for establishing that the parties were at impasse and that Phelps Dodge has the burden to prove the ineligibility of the claimants for benefits. The union is correct in its position in regard to an administrative level of review. See, Gold Bond, supra. However, it is the appellant's duty to demonstrate that the Review Board's decision is erroneous. Bootz Mfg. Co., supra.
The Review Board found that the parties were deadlocked on the non-economic issues of overtime, attendance, and the training/probationary period as well as the economic issues of wage increases, duration of the contract, and cost of living adjustments. The union submitted its first economic proposal on June 19. Phelps Dodge counter-offered with its first economic package on June 24. The parties reconvened and conducted further negotiations on June 26.
Although the June 26 negotiations lasted only five hours, there is evidence to support the Review Board's conclusion that the parties were at impasse. The union had three days to review Phelps Dodge's proposal. There was testimony that the parties had resolved economic issues in a three day period in past years. The union established its deadline by setting June 26 and June 27 for ratification. There was no request for further bargaining sessions. The union is also partially at fault for the limited bargaining time because it did not submit its proposal until June 19. Both parties were adamant on their positions. The union has submitted a very close factual question for review. Based on the evidence and the limited scope of our review, we cannot conclude that the Review Board's decision violated any of the four standards of Gold Bond previously discussed. The union essentially requests this court to reweigh the evidence. Our standard of review precludes this. Gold Bond, supra.
The union also attacks the Review Board's decision by arguing that there was substantial movement by both parties during the June 26 meeting. Consequently, the union concludes that the Review Board's determination that the parties were at impasse is erroneous. The union points out that Phelps Dodge increased its economic offer by nearly one third. The union submitted two counter-offers: 1) a one year contract and a ninety-six cent per hour raise; and 2) a two year contract with the *1016 same amount of wages and a cost of living adjustment. The union argues that these facts establish that there was substantial movement.
There is evidence to support the Review Board's finding that the parties were at impasse and deadlocked on crucial issues. The record shows that the union solicited a final offer from Phelps Dodge on its economic package and that the union considered it as a final offer. The offer was subject to ratification and was rejected by the union membership. The union did not request any further bargaining sessions or propose a counter-offer after soliciting this offer. The Review Board also found the parties were deadlocked on non-economic issues, which were the subject of bargaining throughout most of the negotiations. The union and Phelps Dodge have submitted various portions of the record to buttress their positions as to whether the parties were deadlocked on both the economic and non-economic issues. The union has again presented a close factual issue, but there is substantial evidence of probative value to support the Review Board's finding that the parties were at impasse and that a settlement was not reasonably foreseeable, as defined by the caselaw.
The union also argues the Phelps Dodge refused to allow its best economic proposal be subjected to a ratification vote. During the June 26 meeting, Phelps Dodge submitted a third and better economic proposal to the bargaining committee. The proposal was conditioned upon the bargaining committee's recommendation to the union membership that the offer be ratified. The union refused to recommend it and the offer was withdrawn. The union fails to support its argument with any citation of authority and the issue is therefore waived. Dominguez v. Gallmeyer, (1980) Ind. App., 402 N.E.2d 1295. Moreover, this court fails to realize what is wrong with a party submitting a conditional offer during labor negotiations. The union alleges that the conditional offer demonstrates the parties were not at impasse because Phelps Dodge was willing to give greater benefits. Phelps Dodge's offer was conditioned on the bargaining committee's recommendation. The determination of whether the parties were at impasse is a factual determination.
The union's final argument is that the Review Board ignored competent evidence. The union correctly points out that in addition to four reasons for reversing the factual determinations of the Review Board previously discussed, the Review Board can be reversed for ignoring competent evidence. Williamson Co. v. Review Board, (1969) 145 Ind. App. 266, 250 N.E.2d 612.
The union contends that the testimony of a witness for Phelps Dodge establishes that the employer instituted the lockout in order to force settlements at other plants which had contracts set to expire. The union asserts that the Review Board ignored this evidence. Our review of the testimony does not support this contention. The witness explained that the reason the lockout was implemented was because the parties were at impasse and secondly, that Phelps Dodge thought the union would "drag their feet" until the other bargaining agreements expired. The witness merely verbalized his thoughts as to why the parties were at impasse. We remain unpersuaded that the Review Board ignored any competent evidence in its determination.
The judgment is affirmed.
RATLIFF, P.J., and NEAL, J., concur.