A–1 COMPRESSOR, INC.,
Employer-Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, David L. Adams and Paul M. Hutson, as members of and as constituting the Review Board of the Indiana Employment Security Division, and Dorothy B. Adams, et al, Claimants-Appellees.

No. 2–385A75.

Court of Appeals of Indiana,
First District.

Aug. 20, 1985.

Rehearing Denied Sept. 18, 1985.

---

John T. Neighbours, Keith E. White, Roberts, Ryder, Rogers & Scism, Indianapolis, for employer-appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for claimants-appellees.

## STATEMENT OF THE CASE

NEAL, Judge.

Employer-appellant, A–1 Compressor, Inc. (A–1), appeals a decision of the Review Board of the Indiana Employment Security Division (Review Board) granting benefits to Dorothy B. Adams, et al, being 39 claimants who were employees of A–1.

We affirm.

## STATEMENT OF THE FACTS

The evidence is largely undisputed. All claimants were employees of A–1 and members of United Electrical, Radio and Machine Workers of America, Local 925, the recognized union representing all A–1's 70 hourly employees. As the then existent three-year labor contract approached its August 20, 1982 expiration date, contract negotiations were begun. However, by August 20 an impasse had been reached. On August 21 pickets appeared and on August 23, the next work day following the contract's expiration, the strike commenced. On August 23 eleven union employees crossed the picket line and returned to work. Shortly thereafter, six more followed suit. Beginning August 27 and ending September 2, A–1 hired 11 new employees designated by A–1 as "permanent replacements". The reduced workforce of 17 union employees and 11 non-union employees resulted in a decline of A–1's compressor remanufacturing from the pre-strike level of 40 per day to a post-strike level of 15 per day. In addition, sales fell off substantially due to both the strike and the business deterring activity of union officials. By the time the Review Board heard the case, A–1's sales had yet to achieve the pre-strike level.

On September 2, for fear of losing their jobs, the union membership voted to terminate the strike, accept A–1's last offer and return to work. On September 3 the picketing ceased and the employees presented themselves for work at the plant entrance

**1122**

where they were met by Robin Moschell, the Employee Relations Manager. A letter addressed to A–1's president was presented to Moschell. It read:

"The membership of U.E. Local 925 has voted to accept the 'Company's Final Proposal', presented to the Union on August 20, 1982.

All employees are expected to report to work effective 7:00 a.m., Friday, September 3, 1982. Any employee not reporting to work at this time, will be instructed to return to work no later than Tuesday, September 7, 1982."

Record at 139.

At the hearing Moschell admitted that she told the employees and union representatives that there were no job vacancies and that A–1's August 20 final proposal was no longer on the table. Moschell then asked them to honor the company's property lines. When asked by the union representatives if the striking employees were locked out, Moschell testified at the hearing that she told them that they were not locked out. However, union representatives testified that she told them they were locked out and would not be allowed to return to work. Picketing was immediately resumed, but instead of carrying signs stating "Strike Wages and Insurance Benefits"; the signs now read "Unfair Labor Practices" and "Lock Out". On September 28, a contract was signed between the union and A–1, retroactive to September 3. However, the record is silent as to the fate of either the union employees or the permanent replacements or of any circumstances occasioned by the new contract.

The claimants filed applications for unemployment benefits. The Review Board held that they were ineligible for benefits from August 21 to September 3, because of the labor dispute disqualification contained in IND.CODE 22–4–15–3, but not ineligible thereafter, if otherwise eligible, under *Jackson v. Review Board of Indiana Employment Security Division*, (1966) 138 Ind.App. 528, 215 N.E.2d 355. The Review Board, by adopting the findings and conclusions made by the Appeals Referee, interpreted *Jackson* as holding that where employees go on strike and are permanently replaced and there is no work available, they should not be disqualified under the Labor Dispute Section from receiving unemployment benefits.

### ISSUE

The principal issue is whether or not the claimants were subject to the statutory disqualification of IND.CODE 22–4–15–3, which makes an individual ineligible for benefits where unemployment is due to a labor dispute at the premises at which he was last employed. Other subissues discussed by the parties involve two statutory amendments subsequent to the *Jackson* decision, the present applicability of *Jackson*, the relevance of a work stoppage, the sufficiency of the evidence and whether or not normal business activities resumed after the strike. We shall address them, however, as a single issue: whether, in light of subsequent statutory changes and federal court decisions, *Jackson* is still good law regarding the interpretation of IND.CODE 22–4–15–3.

### DISCUSSION AND DECISION

The Review Board's decision rested squarely on *Jackson*. It found that the claimants became unemployed on August 21 due to a labor dispute and were therefore disqualified from receiving unemployment benefits as of that date under IND. CODE 22–4–15–3. However, since the striking employees were permanently replaced on September 3 the labor dispute disqualification terminated on September 3 and they were thereafter no longer disqualified from receiving benefits by virtue of the labor dispute.

In *Jackson* all strikers were replaced immediately and no cessation of work occurred at all. Appellants in that case argued alternatively (1) that while engaged in a strike they were discharged and were unemployed by reasons solely within the control of the employer; or (2) that there was no work stoppage resulting from the labor dispute, as required by the version of

IND.CODE 22–4–15–3 existing prior to 1980, to create ineligibility.

The court, reciting the purpose of the statute (to provide payment of benefits for persons unemployed through no fault of their own), stated that the essential question was whether, under proper interpretation of the Employment Security Act, employees who were permanently replaced are eligible for benefits. The court held that labor disputes, as used in this section, necessarily imply the existence of an employer-employee relationship and when such relationships are terminated, the labor dispute section no longer applies.

> "We are of the opinion that this reasoning promotes the purpose of the Act, as where employees go on strike and are permanently replaced, they should not be disqualified from benefits under the Labor Dispute Section...."

*Jackson, supra,* at 535, 215 N.E.2d 355. *See also Blakely v. Review Board of the Indiana Employment Security Division,* (1950) 120 Ind.App. 257, 90 N.E.2d 353.

A–1 points out that IND.CODE 22–4–15–3 was amended in 1980, and the phrase "due to a stoppage of work" was deleted and the relevant portion of the section was left to read:

> *"Work stoppage because of labor dispute—Individual not participating—Separate units of work—Exception.*
>
> (a) An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which his total or partial or part-total unemployment is due to a labor dispute at the factory, establishment, or other premises at which he was last employed.
>
> (b) This section shall not apply to an individual if he has terminated his employment, or his employment has been terminated, with the employer involved in the labor dispute; or if the labor dispute which caused his unemployment has terminated and any period necessary to resume normal activities at his place of employment has elapsed; or if all of the following conditions exist: He is not participating in or financing or directly inter-

ested in the labor dispute which caused his unemployment; and he does not belong to a grade or class of workers of which, immediately before the commencement of his unemployment, there were members employed at the same premises as he, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress." [Subsections (c), (d) and (e) are not applicable here and are omitted.]

A–1 then suggests that this amendment was intended to disqualify all striking employees regardless if they are permanently replaced. While we agree that the employer no longer needs to prove work stoppage as a result of a labor dispute in order to disqualify striking employees, (*Pierce Governor Company v. Review Board of Indiana Employment Security Division,* (1981) Ind.App., 426 N.E.2d 700), the section does not disqualify all strikers. If the legislature intended to disqualify all striking employees it could have easily done so. In fact, the first three lines of subsection (b) seem to affirm, rather than repeal, *Jackson.* In any event, since the legislature re-enacted this section and did not repeal *Jackson,* an inference can be drawn that it did not intend to do so. 26 I.L.E. *Statutes* 133 (1960). Finally, *Jackson* did not turn on work stoppage, but rather on the severance of the employer-employee relationship. Therefore, the 1980 amendment is irrelevant to the problem regarding the status of permanently replaced strikers.

Also irrelevant is the lack of a finding that A–1 resumed or did not resume normal business activity, and if so, when. When strikers are terminated, as were the striking A–1 employees, the resumption of normal activities is not an issue.

A–1 next argues that *Jackson* is no longer viable in light of federal labor law which provides that permanent replacement of

**1124**

striking workers does not sever the employer-employee relationship. A–1 cites *Laidlaw Corporation v. National Labor Relations Board*, (7th Cir.1969) 414 F.2d 99, cert. denied, as support. This position, as applicable to unemployment compensation, was soundly rejected in Indiana in *Warner Press, Inc. v. Review Board of the Indiana Employment Security Division*, (1980) Ind.App., 413 N.E.2d 1003.

In *Warner Press* the employer asserted that the Review Board's authority to award strikers unemployment compensation had been pre-empted by federal law (presumably either *Laidlaw, supra*, or *NLRB v. Fleetwood Trailer Company*, (1967) 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614). The court responded as follows:

"That contention is predicated on the proposition that such payments significantly interfere with the collective bargaining procedures protected by the National Labor Relations Act. That argument was recently rejected by the United States Supreme Court in *New York Telephone Co. v. New York Department of Labor*, (1979), 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 wherein the court held that payments to striking workers neither impermissibly infringe upon activities that are subject to regulation by the National Labor Relations Board nor involve any attempt by the state to regulate private conduct in the labor-management field."

*Warner Press, supra*, at 1006.

■ Finally, A–1 argues correctly that once the existence of a labor dispute is established, the burden of proof shifts to the claimants to prove that they have now become qualified for benefits. *Aaron v. Review Board of the Indiana Employment Security Division*, (1981) Ind.App., 416 N.E.2d 125. A–1 then asserts that the claimants have failed to carry their burden of proof. The Review Board, not us, must determine from the evidence if the claimants here carried their burden of proof. *Aaron, supra.* Upon review we do not weigh evidence. *Aaron, supra.* A–1's management told claimants that *perma-*

*nent* replacements had been hired; that no vacancies existed; and that they would not be permitted to return to work. We believe the claimants have carried their burden in proving that they had been terminated. The burden is upon A–1 to demonstrate error. *Auburn v. Review Board of the Indiana Employment Security Division*, (1982) Ind.App., 437 N.E.2d 1011. A–1 has not. The record is silent, as well as the briefs, as to what occurred relative to the September 28 settlement, or the fate of the workers and the permanent replacements. Thus nothing even suggests error on the part of the Review Board regarding its decision that the striking A–1 employees were terminated.

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, P.J. and ROBERTSON, J., concur.