**DIETRICH INDUSTRIES, INC.,**
Appellant–Employer,

v.

**TEAMSTERS LOCAL UNIT 142,**
Appellees–Claimants,

**Indiana Department of Workforce
Development Review Board,
Appellee.**

No. 93A02–0703–EX–244.

Court of Appeals of Indiana.

Feb. 8, 2008.

Jennifer J. Monberg, Johnson & Rappa, LLC, Merrillville, IN, Attorney for Appellant.

Paul T. Berkowitz, Paul T. Berkowitz & Associates, Ltd., Chicago, IL, Attorney for Teamsters Local No. 142.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Workforce Development Review Board.

## OPINION

MAY, Judge.

Dietrich Industries appeals the Unemployment Insurance Review Board's determination that its employees were eligible for benefits during a lockout and the subsequent "start up" period. We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Dietrich Industries is a steel processing plant in Hammond, Indiana. It employs members of Teamsters Local Union 142. The collective bargaining agreement between Dietrich and the Union expired on February 28, 2006. In their negotiations for a new agreement, Dietrich and the Union were unable to agree on two issues: a tiered wage program and employee contributions to healthcare. As a result, the union workers went on strike on May 5, 2006.

On September 8, 2006, Richard Knipp, the Union's secretary and treasurer, notified Dietrich the striking workers would return to work "unconditionally," effective at 3:00 p.m. that day. (Appellant's App. at 131.) Nancy Albert, Dietrich's director of human resources, responded to Knipp in a letter dated September 11, 2006. The letter states:

> Please accept this letter as formal notice that the Company shall not offer reinstatement to the striking employees until an agreement is reached. Accordingly, the Company is implementing a lockout effective immediately. The Company will provide its final written offer to the Union by the close of business, Thursday, September 14, 2006.

(*Id.* at 132.) Dietrich continued to operate using management, secretarial staff, and workers from other plants.

A new collective bargaining agreement was ratified on September 24, 2006. At that time, Dietrich began rehiring the union employees in order of seniority. By October 2, 2006, twenty-eight of the union workers had returned to work, and sixteen were laid off.[2]

All forty-four workers filed claims for unemployment benefits. Dietrich disputed the claims, asserting an impasse existed from May 5, 2006 until September 24, 2006 and Dietrich was in the process of starting up its business from September 24, 2006 to October 2, 2006.

---

1. We heard oral argument on December 18, 2007. We commend counsel for the quality of their advocacy.

2. Dietrich disputed the workers' claim for benefits only for the period between September 8, 2006 and October 2, 2006. The layoffs occurred on October 2, 2006, when Dietrich finished the process of determining which employees would return to work. Whether the laid-off workers were entitled to benefits after October 2, 2006 was not an issue before the ALJ.

A hearing was held before an Administrative Law Judge on November 29, 2006. The ALJ found an impasse existed from May 5, 2006 to September 8, 2006, but not at the time of the lockout. The ALJ found Dietrich "continued to ·function," and had work available for all forty-four workers as of September 11, 2006. (*Id.* at 153.) Accordingly, the ALJ found the forty-four workers were eligible for unemployment benefits from September 8, 2006 to October 2, 2006.

Dietrich appealed to the Review Board, which adopted the ALJ's findings of fact and conclusions of law. Dietrich now appeals the decision of the Review Board.

## DISCUSSION AND DECISION

 When reviewing an unemployment compensation proceeding, we "are bound by the Review Board's resolution of all factual matters; thus, we neither reweigh evidence nor reassess witness credibility." *KLR Inc. v. Ind. Unemployment Ins. Review Bd.*, 858 N.E.2d 115, 116 (Ind. Ct.App.2006). We consider the evidence most favorable to the Review Board's decision and the reasonable inferences to be drawn therefrom. *Id.* We will not set aside the decision if there is substantial evidence of probative value to support the Review Board's conclusion. *Id.* "When, however, an appeal involves a question of law, we are not bound by the agency's interpretation of law, and we will reverse a decision if the Board incorrectly interprets a statute." *Id.* "The Employment Security Act should be liberally construed in favor of the employee. If it is susceptible of more than one interpretation it is to be construed in such manner as to effectuate the humanitarian intention of the legislature in enacting it." *USS v. Review Bd. of Ind. Employment Sec. Div.*, 527 N.E.2d 731, 737 (Ind.Ct.App.1988) (citations omitted), *trans. denied.*

1. *September 8 to September 24*

Dietrich argues the employees are ineligible for benefits for this time period because a labor dispute existed until the collective bargaining agreement was ratified on September 24.

 "An individual shall be ineligible for waiting period or benefit rights for any week with respect to which his total or partial or part-total unemployment is due to a labor dispute at the factory, establishment, or other premises at which he was last employed." Ind.Code § 22–4–15–3(a).

A labor dispute exists where the bargaining is not in a fluid state and an impasse has developed in the negotiations. An impasse is defined as an absence of an atmosphere in which a reasonably foreseeable settlement of the disputed issues might be resolved. A settlement is not reasonably foreseeable when the parties are deadlocked on certain crucial issues without which an ultimate agreement is not possible.

*Auburn v. Review Bd. of Ind. Employment Sec. Div.*, 437 N.E.2d 1011, 1014 (Ind.Ct.App.1982) (citations omitted). A strike or a lockout can be a labor dispute as long as there is a controversy concerning the terms and conditions of employment. *Aaron v. Review Bd. of Ind. Employment Sec. Div.*, 416 N.E.2d 125, 131–32 (Ind.Ct.App.1981).

 Once the employer has established there is a labor dispute, the employees bear the burden of proving they are qualified for benefits. *A–1 Compressor, Inc. v. Review Bd. of Ind. Employment Sec. Div.*, 481 N.E.2d 1120, 1124 (Ind.Ct.App.1985). In other words, the employees "must show that the continued unemployment is not the result of the labor dispute but rather is due to independent causes." *Aaron*, 416 N.E.2d at 134.

Dietrich claims it presented "undisputed testimony that the lockout was caused by an impasse over terms and conditions of employment, including a tiered wage program and employee contributions to health care, which was not resolved by the parties until the contract was signed on September 24." (Appellant's Br. at 10.) Dietrich contends the offer to return to work could not end the impasse because there was no evidence either party had changed its position on the disputed issues at that time.

■ The existence of an impasse is a factual determination by which we are bound as long as it is supported by substantial evidence. *Auburn,* 437 N.E.2d at 1016. We cannot say the ALJ erred by finding the offer to return to work created an atmosphere in which a settlement of the disputed issues was reasonably foreseeable. Although the Union did not present a new position to Dietrich on September 8, its offer to resume work "unconditionally" indicates it was willing to negotiate. (Appellant's App. at 131.) Having given up on the strike, the Union had little power to impose its terms on Dietrich. The ALJ's conclusion is supported by substantial evidence.[3]

Nevertheless, Dietrich claims enforcement of our unemployment laws under these circumstances is pre-empted by the National Labor Relations Act. Dietrich notes that declaring a lockout during a labor dispute is a federally protected right under the National Labor Relations Act. If workers are allowed to receive unemployment compensation during a lawfully instituted lockout, Dietrich argues, it will in effect be required to pay for the exercise of its rights under the NLRA. Dietrich cites decisions holding the NLRA preempts state laws that frustrate its purpose, even if they are not in direct conflict with the NLRA. *See, e.g., Nash v. Fla. Indus. Comm'n,* 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967) (state law disqualifying employees from unemployment benefits if they filed charges with National Labor Relations Board preempted by NLRA).

The Review Board[4] cites *Warner Press, Inc. v. Review Bd. of Ind. Employment Sec. Div.:*

Finally, Warner Press contends that the Review Board's authority to award unemployment compensation to strikers has been pre-empted by federal labor laws. That contention is predicated on the proposition that such payments significantly interfere with the collective bargaining procedures protected by the National Labor Relations Act. That argument was recently rejected by the United States Supreme Court in [*N.Y.*

3. Dietrich also argues the ALJ applied the wrong burden of proof. The ALJ's opinion states, "It is concluded that the employer failed to present substantial evidence of probative value to show that the parties were at impasse at the time of the lockout," (Appellant's App. at 153), and cites *City Pattern & Foundry Co., Inc. v. Review Bd. of Ind. Employment Sec. Div.,* 147 Ind.App. 636, 263 N.E.2d 218 (1970). *City Pattern* states a reviewing court may reverse the decision of the Review Board if no substantial evidence supports the decision, *id.* at 223 n. 8, but does not discuss the employer's burden of proof. Although the case cited by the ALJ does not state the applicable burden of proof, we conclude this is not reversible error because the ALJ's decision is supported by substantial evidence.

4. The Review Board argues Dietrich has waived its argument based on the NLRA because it has been raised for the first time on appeal to this Court. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Review Bd. of Ind. Employment Sec. Div.,* 493 N.E.2d 1275, 1278 (Ind.Ct.App.1986) (finding issue not raised before Review Board had been waived). Nevertheless, the Review Board addressed the merits of Dietrich's argument. As we agree with the Review Board's analysis, we will also address the merits.

*Telephone Co. v. N.Y. State Dep't of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979),] wherein the court held that payments to striking workers neither impermissibly infringe upon activities that are subject to regulation by the National Labor Relations Board nor involve any attempt by the state to regulate private conduct in the labor-management field.

413 N.E.2d 1003, 1006 (Ind.Ct.App.1980).

In *N.Y. Telephone,* the Supreme Court held a New York statute permitting striking workers to receive unemployment benefits was not preempted by the NLRA, even though the benefits were primarily paid by the employer. 440 U.S. at 534–35, 99 S.Ct. 1328 (plurality opinion). A majority of the Justices agreed the statute was not pre-empted because the NLRA was silent on the issue of paying unemployment compensation to strikers, even though the NLRA was enacted contemporaneously with the Social Security Act. *Id.* at 544, 99 S.Ct. 1328; *Id.* at 546–47, 99 S.Ct. 1328 (Brennan, J., concurring in result); *Id.* at 549, 99 S.Ct. 1328 (Blackmun, J., with whom Marshall, J., joined, concurring in judgment).

██ In *Baker v. Gen. Motors Corp.,* 478 U.S. 621, 634–35, 106 S.Ct. 3129, 92 L.Ed.2d 504 (1986), the Court reaffirmed *N.Y. Telephone* and its reliance on the policy behind the Social Security Act. *Baker* involved a Michigan law denying unemployment benefits to workers who financed strikes. Because this activity is protected by NLRA, the workers argued the Court should follow *Nash* and find the law to be pre-empted. The Court distinguished *Nash* on the ground that those workers were not voluntarily unemployed. *Id.* at 637–38, 106 S.Ct. 3129. Although the State could not deny benefits to workers who were involuntarily unemployed, the Social Security Act permitted the State to choose whether to pay benefits to workers who are voluntarily unemployed. *Id.* at 636–37, 106 S.Ct. 3129. *See also Livadas v. Bradshaw,* 512 U.S. 107, 118 n. 12, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (noting that whether federal labor law permits a State to grant or withhold unemployment benefits requires consideration of the policies underlying the Social Security Act). We conclude, therefore, the NLRA does not prohibit unemployment benefits during a lockout.

### 2. *September 24 to October 2*

██ Dietrich claims the workers should not receive benefits for this time period because it was a "start-up time." (Appellant's Br. at 16.) When a labor dispute results in a work stoppage, the "stoppage of work ceases when the employer has been able to resume normal operations." *Pierce Governor Co. v. Review Bd. of Ind. Employment Sec. Div.,* 426 N.E.2d 700, 704 (Ind.Ct.App.1981). "A temporary plan or method resulting in normal production" does not end the work stoppage. *Id.* However, the start-up time "must be limited to the delay directly and proximately caused by the labor dispute" and "must not exceed the time which is reasonably necessary and required to physically resume normal operations." *Aaron,* 416 N.E.2d at 134 (quoting *Carnegie–Illinois Steel Corp. v. Review Bd. of Ind. Employment Sec. Div.,* 117 Ind.App. 379, 72 N.E.2d 662, 666 (1947)).

Dietrich argues it could not resume normal operations immediately on September 24 because it had to rehire workers according to the terms of the collective bargaining agreement. Because Dietrich lost business during the labor dispute, it could not call back all the union workers; therefore, it contacted workers in order of seniority. The process of determining which

employees would return to work took until October 2.

■ The ALJ properly determined the impasse ended on September 8. Because Dietrich continued to operate during the labor dispute, it still had work available for all employees by the time the impasse ended. The ALJ found work was available for all forty-four employees at least until September 11; therefore, any start up time should have been negligible. The delay Dietrich experienced in resuming normal operations was not proximately caused by the worker's strike, but by its decision to declare a lockout. The ALJ did not err by failing to allot a start up time for Dietrich.

For the foregoing reasons, the judgment of the ALJ and the Review Board is affirmed in all respects.

Affirmed.

DARDEN, J., and BARNES, J., concur.